Kijakazi I'm here. All right, mr. Mr. Hello. Can you hear me? Mr. Yonage? I can hear you. Okay. Can you hear me? Yes, so Looks like We have a you on video and Mr. Burdett here in court. So excellent. Thank you. If you are ready to proceed you may you may begin May it please the court. My name is a town castle Yonage and I am representing Gabrielle Cranor in this appeal Gabrielle Cranor has been unable to work for many years due to the combined functional effects of many impairments including Post-traumatic stress disorder depression and anxiety which Ultimately led to her also developing a very severe poly substance abuse problem In fact, the ALJ found that the combined functional effects of all of Cranor's impairments including the poly substance abuse met listing 12.15 which is the listing that applies to post-traumatic stress disorder But the ALJ also found that in the absence of the effects of Cranor's poly substance abuse She did not meet that listing and she would be able to work. We dispute that part of the ALJ's analysis The ALJ improperly rejected the opinions of Cranor's treating psychologist. Dr. Molly O'Neill Who opined that Cranor's overall mental health symptoms are currently severe and she said this many times and she saw and treated Cranor many times is there anything in dr. O'Neill's opinion which specifically addresses What your clients limitations? Would have been absent the substance abuse issues Well throughout the time frame that she was treating this Cranor Cranor was clean and sober. She was she had a relapse but for the most part she was clean and sober She was on methadone Treatment she was living in clean and sober housing. I mean, I'm looking at on that point the records show a lot of substance abuse in the in the records of of your client in the the 2017 period heroin in late 2017 methamphetamine in late 17, etc. But putting that aside My question was is there anything where dr. O'Neill? Specifically who has diagnosed your client with the substance abuse issues as you said, is there anything in her opinion that specifically says? here is the residual functional capacity the ability to work Of your client if she didn't have a substance abuse problem that if she didn't have a substance abuse problem She still couldn't do any relevant work. Is there anything like that in dr. O'Neill's opinion anything explicit? No, there is not because throughout the time frame that dr. O'Neill was treating her. She wasn't using drug Any she was not She was clean and sober for almost that entire period Massive treatments. I don't see how you can say that. I mean counsel I'm looking for example at and I think I have the the record sites 316 which says As a diagnostic impression heroin use just from August of 2017 heroin use disorder severe Methamphetamine use disorder severe last heroin use July 2017 last methamphetamine use August 2017 there's other parts of the record that show October of 2017 and December of 2017 for heroin and methamphetamine use so How can you say that the record shows that she was clean and sober during this entire period or much of it? Well, I think we need to be clear on what period we're talking about here She filed for benefits as far back, you know Alleging disabilities, it's December of 2009 and there's very little evidence that goes back to there and during that entire time frame she was clearly abusing all sorts of Substances so There's no clear Way to prove how she would have been doing during that time frame if she had not been Abusing substances that was a she was using them constantly Her application for SSI was filed in August of 2017 and There is a change in her behavior and it wasn't One day she was using in the next day she was clean and sober because she was slipping back and forth initially but ultimately she ended up in In a clean clean and sober housing and an ongoing intensive Therapy and treatment where she was having to go one day a week for a full day of treatment and several other days a week for for counseling and also going to substance abuse counseling so she was She finally was was dealing with this and dealing with it rather successfully And so really when I talk about Dr. O'Neill's the evidence from her and What she was? Was her description of what she was seeing? it is during a time period in which Craner was transitioning from being a severe drug abuser a drug addict to being clean and sober and and and recovering her life and so the final the thing is what you have to look at is the last couple of times that That dr. O'Neill stated an opinion about how severe she severely impaired. She still was She was almost entirely clean and sober then she'd had one relapse Yes Can you help me with the timeline in the following sense She when's her last eligible date that is to say I understand the date the timeline you've just given me in terms of when she was addicted and then when and sort of meant us to slightly late 2017 she becomes clean Does she have to be disabled before that date the time she becomes clean in order to be eligible help me out with that? Well, there's two separate eligibility issues here. One is Social Security disability. The one is SSI and and honestly the Social Security It is arguable that she's been disabled by the combination since as far back as 2009 but there's not any kind of way. It's awful difficult to determine that from 2009 to 2017 but since there were no periods of sobriety, you just told me that there were two Dates that were relevant, but you didn't give me either date. What are those dates? Well, one of the dates is December 31st 2009 for whatever reason that's that's her alleged onset date in her application, I think that's Based on perhaps the last day she could have been eligible for for title 2 disability benefits. I think the more pertinent pertinent date here is August of 2017 when she applied for SSI because although she was not clean and sober or fully clean and sober at that point in over the ensuing months she began maintaining sobriety and there was no significant difference between Her limitations when she in say August 2017 and then over the next several years when she was maintaining sobriety, but continuing to be substantially impaired I've got an embarrassing question embarrassing for me not for you Help me understand the distinction between disability and SSI and how that plays out here Well, the only way she could get Social Security disability is by proving that she her that she's been unable to do Any kind of work without considering, you know, taking the move moving the factor of drug abuse and alcoholism Since prior to her date last insured and I don't even have that written here But she's at least a leg. I wouldn't be surprised if December 31st 2009 With SSI disability, it's different thing You just have to show that you're unable to work and in this case The judge the ALJ found she was unable to work Since December 30 for excuse me since her application date Well, it's not real clear when he says he found this but certainly he did find that she was disabled When you consider took into account the effects of her mental illness and the effects of her substance abuse Together so the question then is well if you can remove the effects of the substance abuse from the analysis Where she's still disabled and that's awful hard to do if the person never maintains any level of sobriety but once trainers started maintaining sobriety in 2017 2018 2019 it became evident that even sober she was still Impacted to the point that she could not work a full-time job and she was not as impaired She was that clearly is not what the finding of the ALJ was I mean, that's yes You're right. I mean that's obviously why you're appealing but that yes, that clearly is not what the ALJ said and I have trouble seeing how the ALJ is determinations in this regard aren't supported by The ALJ talks about And I think this even goes with what you're saying improved functioning when she's when she started weaning herself From drugs and the ALJ said that based on the evidence including her improvement that absent the The substance abuse there would be jobs that she would be able to do and I don't see any Treating physician who even said Absent substance abuse. This is what she could do So I I have trouble seeing how we can reverse the ALJ given the very deferential standard of review Well, I'll say this again the two last evaluations by dr O'neill were both during time periods where Cranor was fully clean and sober and she Wrote in in her statements that Cranor was still severely impaired by her mental illness But in fairness, dr. O'neill did not specify specific Functional limitations, which is why I then refer to dr. Wingate's evaluation She specified specific functional impairments and she specified them during Described them during time periods in which Cranor was clean and sober She did this once in well, her second evaluation was not considered by the ALJ was submitted to the To the Appeals Council, but it was dated just prior to the ALJ's decision But in both of those evaluations she opined that Cranor had marked limitations in a number of key areas And there's no reason the ALJ didn't state any valid reason for rejecting dr. Wingate's opinion Council I'm sorry. Good. I'm looking at the 2019 Reference that you're you're talking about and it seems to me to be Given the standard of review consistent with what the ALJ found. I mean the 2019 where You're saying she's clean and sober. It says she's taking public transportation. She manages her finances. She does grocery shopping She cooks again now that her children is with her. She has appointments with counselors and gets methadone twice a week. She tends class She gets her children to school in the morning Why aren't those kinds of findings when you're saying she's clean and sober a fully consistent with? The ALJ's findings about what she would be able to do where she completely weaned from drugs Because the ALJ was not including in his residual functional capacity assessment The fact that she also needed to spend an entire day every week and in intensive outpatient treatment in order to treat her Her combination of mental illness and addiction and she also was having to attend several appointments a week that became the issues their Vocational issues that would have impacted her and affected her ability to perform full-time competitive work The other thing is the ALJ's Can I ask you about that? Because you you you do argue that the ALJ erred in not including in the RFC Assessment miss miss Craner's need to attend many of the counseling programs or counseling appointments every week I Guess can you describe for us the duration and frequency of these appointments as reflected in the record? And then my additional question, is there record evidence showing that miss Craner Must attend these counseling sessions during the day or or during the work week  Dr. O'Neill refers to all of the counseling sessions that she was holding for her but also refers to the And dr. Wiggy as well refers to the intensive Outpatient that she was attending for a full day and her testimony also described having to do that and a full day once again It's she would have been able to probably work part-time at some point as things had developed there But Social Security defines work is the ability to perform a job eight hours a day five days a week On a consistent basis and a person who's attending a full day of counseling every week because it's the only way they can maintain sobriety and maintain their mental health functioning Obviously is not going to be able and the vocational expert testified that a limitation I'm missing just one day more than one day per month would Eliminate all the way. I'm out of time. So unless I've got questions I may have missed it But I didn't hear your answer to or I didn't hear an answer to Chief Judge McGee is question about whether There is record evidence that suggested that the one day a week that you're talking about had to be on a weekday for example, or couldn't be fit around couldn't be fit around a Was there anything in the record that said that this day had to be on a day which would have prevented her from having a Five day a week job Anything any record any record page number or page numbers you can point to saying that I'm not I'm not aware of such evidence that it had to be on a on a weekday no If I can take you just a moment over time Assume for a moment that the only way that she can do this intensive counseling the all-day period plus the other Counseling assuming that that does interfere with her ability to engage in full-time work Why is not this Therapy that's necessitated. Why doesn't that qualify as? Drug-related such that She doesn't she doesn't get excused because of it because the drug abuse of alcohol regulations talk about the effects of actually you have to be actively using drugs or alcohol for it to be then counted against you so to speak if the if as an example you Using drugs and alcohol for 10 decades and you now are so that terribly in care that you can't function you even though you're now clean and sober You don't you're that the DNA Former use does not disqualify. I mean, I think that's this is like that. Okay. I don't want it. I'm sorry I get the answer. Okay. Thank you. I do not want to address that the issue here It's not just that she had to go to the counseling for the full day of the ALJ got facts wrong about her her For example attending college where she tried to attend college and had to drop out I mean, there's there's some factual errors there She was bit she was functioning in society But she wasn't functioning to the point where she could have handled the stress of competitive work. Thank you. Thank you. Thank you. Mr Yonage Good Morning your honor's may have pleased the court. I'm David Burdett representing the appellee. Dr. Kilo Kijikaze the acting commissioner. Can you speak up a little bit? I don't know if there's anything we can do with the Oh, I'm sorry. Can you can you hear me now? Yeah. Yes, that's better. I'll try to be closer to the mic. Thank you Before I begin with the substance I want to Answer one thing if I could that judge Fletcher brought up and I think that The distinctions are familiar to the court, but just for the context. I think this will be fruitful as we know Title two disability insurance benefits are based on quarters of work that a person has worked during their life and they accrue certain quarters of coverage and they must be Disability The date for Miss Cranor in this case of last insurance was December 31st of 2014 Then it's a concurrent case meaning it's also in an application under both title 2 and title 16 of the Social Security Act Title 16 is supplemental security insurance SSI And that is the one where the number of quarters of work that you have performed is not relevant It's based on your ability to work or not work as of the month of your application That was the one so that one is August 1st of 2017 So those are the dates and that may be responsive to what judge Fletcher was questioning earlier Okay, so now going ahead Judge Bennett is correct that Dr. O'Neill statement did not address Any specific limitations that the claimant miss Cranor would have absent DAA absent her drug abuse and alcoholism and Mr. Young has made a big deal both in the briefing and argument of saying that dr. O'Neill said that she would have severe impairments We agreed that she would have severe impairments that the appellant miss Cranor would have severe impairments Whether or not she was abusing drugs and alcohol That is certainly the case The ALJ agreed with that to be a severe impairment is not necessarily to be a disabling impairment the ALJ agreed at page 28 of the record that without drug abuse and alcoholism DAA as we abbreviate it without DAA The claimant would still be limited to only occasional and superficial interaction with the general public Jobs that imposed no tandem or teamwork and few workplace changes because of her her history of and her ongoing anxiety depression and PTSD and those are related to things that have that Which she's had those conditions throughout her life and They have been concurrent with her abusing drugs and alcohol now what the ALJ has to Make a finding about though is what would she be able to do with that kind of limitation? Were she not? Abusing drugs and alcohol and the ALJ queried the vocational expert the vocational expert based on those limitations came out with sample jobs And there really is not any evidence that For example The scheduling go ahead Pick up we're kind of left off a little bit With mr. Yonage Because you just kind of I think summarize the question for the vocational expert But I'm not sure that it included the number of hours that she would need to go for counseling Which seems rather intense? Understandably in light of what you just described her severe impairments to be Whether with when you consider the DAA or not And so I'm trying to figure out if that was problematic if it didn't include those That amount of time in factoring in what what job she could do. Can you respond to that? I say it's not problematic. Yeah, tell me why or I mean No, you think it was problematic but harmless or do you think it's not problematic at all to to be serious? I I think it's not problematic because there isn't evidence as to whether that Counseling session that supposedly one whole day of Counseling has to be during the workweek now. Mr Yonage is correct that when we speak of work for Social Security, we're Ordinarily talking about full-time work five times eight five days a week Eight hours a day or the equivalent that's full-time work and we can't we can't make a finding that a person can can work Can work if they can't do that amount of work, but it doesn't have to be Monday Tuesday Wednesday Thursday Friday Can be any days of the week and and any hour shifts of the day that amount to those hours following up on this the ALJ noted at ER 23 that Claimant attends for counseling sessions a week as well as addiction classes and a a meetings Was there any? testimony or record evidence That you're aware of that before the ALJ that there is a full day She needs to attend what day of the week that would have to be at or did anyone testify or post questions to the VE? That would any of this interfere with her ability to have a full-time job? I don't I don't think so I think the answer is no your honor. I I don't recall it But the fact that I don't recall it doesn't mean it's not there. Yeah, I I don't think it is there I don't think it is there. I know mr. Yonitz will correct me if it's if it's there But I don't I don't think that's there and if if it's not there in terms of in the record evidence We can't Extrapolate how much that would be or anything like that. No, we we cannot at this stage read that into the Yes as to what that is on the record. No, your honor. I don't put I don't believe that I think the only thing that I can remember from the record I think is that the AA meetings were at night Your honor, I don't even want to hazard a guess about that. I don't remember that I know that they often are but I don't I don't know that and I don't want to put it in the record if it Isn't there? Let's if we can let's talk about the ALJ's Reference to daily activities of miss Craner that the ALJ found inconsistent I guess with miss crane Craner's testimony I'm Trying to figure out because we have case law all over the place with respect to daily activities And there certainly is there's a ton of it and it cuts all ways and it's hard because I'm trying to figure out what were the facts in those cases and it seems like it's a very fact-intensive analysis and I'm trying to figure out. Are you arguing that any of those activities involved transferable work skills? No, your honor, we're just no the answer is no and So if it's not Then we have to try to figure out if these were If this was sufficient errors, you know evidence here to support the ALJ's determination So why don't you talk to me about that and why you think it is supportable? Thank you, your honor So the answer is no We're not arguing that those activities transfer to a certain set of work skills or that this Activity means a certain work skill. The answer is that the activities are incompatible with the claim That absent DAA she would be disabled by Certain limitations or they're incompatible with the claim that she has a certain degree of limitation. For example If she is and this is in particular the big claim is that she's not able to be around people and That the age I'm generalizing that but the big claim is that she's disabled by an inability to work around people because of her Anxiety and PTSD and the ALJ bought that to a degree. She has a severe impairment that limited her as we discussed a minute ago but Several of these activities involve her and being around people quite a lot Taking the train you go to the train station you ride on the train Going to the gym five days a week Going over and working with her neighbor on gardening Going to the casino repeatedly going to this casino frequently going to the casino as the ALJ inferred These are not isolated activities. These are activities that involve a lot of contact with the social world and There is no question that she was going to the gym five days a week from 2017 There's no question that she was going in although. Mr. Yannis disputes this There's really no question that she was going to the casino on a regular basis. And so so you're your argument this case is different from the other cases in which We are this court has concluded that the the mere fact that a plaintiff has carried out basic daily activities does not in Anyway ability as to her overall disability correct We're art, but you are you are saying that the ALJ? Direct there's substantial evidence supporting the ALJ s determination that her undisputed Actual daily activities are inconsistent with her description of some of her limitations. Yes, Your Honor they're inconsistent with her claims with her description of The argument with respect to activities of daily living now I Would like to get on and I will answer any more questions that the panel has about the activities of daily living But I would like to get on to one thing. That is a Little bit different about this case from some other Social Security cases It's a bruise case meaning it's in the it's in the posture of this court's decision in bruise where a a late piece of evidence Not not not late against the rules But a piece of evidence was submitted to the Appeals Council that the ALJ did not have the opportunity to review and that's dr Wingate's 2019 opinion and we we have to say we have to establish that The ALJ s decision is supported by substantial evidence Even when you review the record that includes the dr. Wingate opinion that was submitted to the Appeals Council and In this case, I think that we do have that because dr Wingate's 2019 opinion that was only submitted to the Appeals Council Of course, the ALJ didn't have the opportunity to review it, but the ALJ did review the 2017 opinion of dr Wingate and if you look at those opinions side by side Dr. Wingate checks the same boxes in 2017 as in 2019 with regard to the claimants market limitations in her opinion market limitations And so the ALJ's remarks with regard to the one apply equally with regard to the other that to me is The the point on which this decision stands and I've basically laid out the position on it for us Is that the the ALJ's remarks with regard to the 2017 opinion also suffice with regard to the 2019 opinion? Other than that, I would just like to make the point that Dr. O'Neill as Judge Bennett noted in his questioning Really did not make any Specific findings as to her as to Cranor's vocational limitations at all We really don't have that much of a problem with dr. O'Neill's opinion She doesn't she doesn't put in the record any vocational limitations that would prevent Cranor from doing the work that the ALJ assigned to her with his residual functional capacity findings and finally, I would like to just Keep in the keep in the court's mind that this court has said as far back as 2007 that with regard to the materiality of DAA to a claimant's disability Which is the case that we have here the claimant is disabled when her DAA her drug abuse and alcoholism is Included in the set of limitations, but that's material and when it's material, of course, she's not eligible The the claimant at all times bears the burden of proving that her disability was not material in this course This court said that in para versus Astro in 2007, and that's the rule and we don't believe that she's met that here Can I answer any other questions from the panel? I Know thank you Thank you very much Mr. Yash, you ran out of your time. I'll give you one minute I'm okay. I'm on you Okay, I want to just a couple things quickly First of all, the key evidence that supports disability here are the evaluations by dr Wingate both one in 2017 and then the fact that in 2019 she's basically said that she was continuing to be unable to handle the stress of the normal work environment The issue as far as did the ALJ properly reject that evidence the ALJ only stated that her her opinion was alleged was not supported by evidence of Craner's activities and supposedly it was Her depression anxiety period we do in large part to situational stressors related to her children Those are the ALJs only two reasons for rejecting dr. Wingate's opinion. Those reasons are not sufficient the other thing is that with regard to Her testimony about her functioning She testified about trying to ride the bus and having to get off the bus when there are too many people on it Couldn't even go to her destination She testified about not being able she'd be around more than four people She'd have to leave stand by the door AA meetings and leave because she couldn't handle being around everyone But she went to them anyway, because she needed to she knew it This is a woman who's fought back from horrible horrible horrible Experiences as a child and is almost back, but she's not back yet. That's the issue here Thank you. Thank you. Mr. Janich and mr. Burdett for your very interesting presentations here today the case of Gabrielle Craner versus a keel Kija Kazi is Submitted and that concludes our oral argument calendar in our docket for today. Thank you very much will be adjourned
judges: MURGUIA, FLETCHER, BENNETT